## *Ex parte* George W. Thatcher.

### *On writ of Habeas Corpus.*

A Clerk of the County Commissioners' Court was directed to enter an order of allowance of a claim presented against the county, which he refused to do. After a second order and a refusal to comply, he was directed to show cause why he should not be removed from office. Not showing cause to the satisfaction of the Court, an order of removal was directed to be entered, from which he appealed to the Circuit Court, and gave bond, as directed by the Court: *Held,* that taking the appeal and giving bond, operated as a *supersedeas.*

A clerk of the County Commissioners' Court, who had been ordered to be removed from office, but who had appealed from such order, was directed to deliver the books, &c., of his office to a person whom the Court had appointed as his successor. He refused to comply, and the Court ordered the successor to enter an order of commitment of his predecessor to jail for fifteen days, for a contempt in not delivering up the books, &c., as required, which was done, and an attachment issued and delivered to the sheriff, who arrested him: *Held,* that the appeal operating as a *supersedeas,* there was no vacancy in the office, and that no successor could be appointed: *Held,* also, that the Court could not punish for a contempt in such case, and, therefore, that the order of commitment and the imprisonment under it were both illegal and void.

The County Commissioners' Court, under the statute, has the power of enforcing its orders, decrees and judgments by attachment or other process; and to punish for contempt, as other Courts may do, and all the power necessary to the right exercise of the jurisdiction with which it is, or may be vested, according to law. But this power has its limits, and other Court may not treat any and every act as a contempt.

This was a proceeding by a writ of *Habeas Corpus,* issued from this Court, and directed to William B. Warren, requiring him to bring before the Court the body of one George W.

Thatcher, and to certify the day and cause of his caption and detention. The said Warren complied with the mandate of the writ, and in his return thereto, set out specifically the causes of such caption and detention, which are cited in the Opinion of the Court.

*J. A. McDougall,* Attorney General, submitted the writ and return to the Court.

The Opinion of the Court was delivered by

SCATES, J. On petition of George W. Thatcher, a writ of *Habeas Corpus* was issued out of this Court to William B. Warren, to bring before the Court said Thatcher, and certify the day and cause of his caption and detention.

To the writ Warren returned, that at a County Commissioners' Court for Hancock county, holden on the 6th day of January, inst., Hebe M. Baldwin presented a claim for $15·05 for corn and sheep furnished to J. B. Backenstos, sheriff of said county, for the use of the *posse* under his command; and asked to have the claim audited and allowed out of the county treasury. The Court audited and allowed said claim, and ordered the clerk, George W. Thatcher, to enter the same. Thatcher refused to make the entry. On the next day, the Court again ordered Thatcher to make the entry, who again refused.

They then called upon him to show cause why he should not be removed from office as clerk, when, on his not showing cause to their satisfaction, an order of removal was directed to be entered, from which Thatcher appealed, and gave bond as directed by the Court. The Court thereupon appointed one George Edmonds clerk, who gave bond and was qualified. Thereupon, the Court ordered Thatcher to deliver up the books, papers, money, &c., to Edmonds, which he refused to do. Whereupon, the Court ordered Edmonds to make an order committing Thatcher to jail for fifteen days, for a contempt in not delivering the books, papers, &c., pursuant to the order. Edmonds issued an attachment, and delivered it to Backenstos, the sheriff, who arrested Thatcher, and by

order of the Court, Backenstos delivered Thatcher to War-
ren to be brought before this Court on *Habeas Corpus* to be
applied for.

The paper returned as the attachment, under which this
arrest has been made, does not agree in the cause, for which
the order of commitment was made, with the return of
Warren. The former states it to be for refusing to enter the
order as directed; the latter for refusing to deliver the books,
papers, &c. But as neither the Attorney General, nor the
prisoner have traversed the return, we must take it to be true.

A short analysis of the organization and powers of that
Court will readily determine this question. In the first
place I would observe, that that Court is not the appointing
power in filling the office of clerk, but it is filled by election.
Rev. Stat. ch. 27, § 11.

They have power to fill vacancies occasioned by death,
resignation, removal or otherwise. Ib. § 11.

They may, for misconduct in office, gross neglect of duty,
incompetency, or other good cause shown to be entered of
record, remove their clerk, whose office shall be considered
vacant. Ib. § 10. But this section must be considered, and
construed in connection with the forty second section of the
same chapter, which provides that any party to a proceeding
before them, who may feel agrieved by the final decision,
judgment or order, shall be allowed to appeal to the Circuit
Court.

There can be no doubt of the right of the clerk to appeal
in this case, and there is as little doubt, that the appeal ope-
rated as a *supersedeas* of the order of removal, until the
determination of it in the Circuit Court, like appeals from
the Circuit to the Supreme Court.

Again, in relation to their power to punish by fine and im-
prisonment for contempt, they have power to enforce their
orders, decrees and judgments, by attachment or other
process. Ib. § 28. They have power to punish for con-
tempt as other Courts may do, and have all the power
necessary to the right exercise of the jurisdiction, with
which said Court is, or may be vested according to law.
Ib. § 29.

*Ex parte* Thatcher.

These are salutary and necessary powers to every Court for the preservation of order and decorum, and the enforcement of its judgments. Its supervision, when exercised in the punishment of contempts, is a most delicate jurisdiction, and seldom, if ever, ought to be exercised. It is, indeed, denied that any appeal, or writ of .error lies from its judgment for contempt by any Court. I will not undertake to decide the general question, but the power has its limits. The Court may not treat any and every act as a contempt, and I have no doubt that the appellate Court may revise and reverse its judgment when it exceeds its jurisdiction, by treating that as a contempt, which in law, is no contempt, and cannot be. The supervision will be to ascertain that fact. We are not without precedent for this; one article in the impeachment of Judge Smith, before the Senate was for an illegal power; and in the case of *Stewart* v. *The People*, 3 Scam. 395, this Court reversed a judgment of fine for a contempt imposed by the Cook Circuit Court.

Having settled satisfactorily, as I think, the question of a supervisory power in this Court under certain circumstances, and upon a reasonable distinction, without touching the general question as to all cases, I come now to its application to this case. The return shows that the imprisonment was for refusing to deliver the books and papers, &c. For refusing to deliver them "after going out of office," to his successor the statute has declared, that the clerk shall forfeit "any sum not over five hundred dollars, and be imprisoned any time not exceeding thirty days, at the discretion of the Court, before which he may be tried." Rev. Stat. ch. 27, § 13.

Now it is to be observed, that he cannot be tried before the Commissioners' Court, for by the twenty ninth section it is expressly declared, that "there shall be nothing contained or construed in this chapter to give said Court any original or appellate jurisdiction, in civil or criminal suits or actions, wherein the State is a party, or any individual or individuals, bodies politic or corporate, are parties."

It is, therefore, very clear, that they had no jurisdiction in the matter, and consequently could not treat the refusal as a contempt. The order of commitment for that cause, and

the imprisonment under it, are both illegal and void.   In relation to the paper purporting to be an attachment, I would remark that it is proof of nothing, being illegal and void, not having been issued by any officer.   The Court had no power to make an appointment of a clerk, after appeal perfected, which appears to have been done immediately, by delivering a sufficient bond to the Court.

The power of the Court, in my mind, to punish the clerk for a contempt, in refusing to enter up its orders, is unquestionable.   It is not the province or duty of the clerk to determine what orders may, and what may not be entered; and and what claims may, and what may not be allowed.  I have no hesitation in believing, that if the Court should make an illegal and unjust allowance against the county without jurisdiction and authority of law, that any citizen, or number of them, being taxable inhabitants of the county, might have redress by appeal from the order of allowance, or at least by bill in equity; but it cannot be by refusal of the clerk to enter the order of allowance.

From the return of Warren, this appears to be an extraordinary case, surrounded by extraordinary circumstances. The prisoner for himself, and the Attorney General who represents the people in this case, not having traversed the facts in the return, have admitted the return to present them truly.   By the return it appears, that the County Court removed the clerk for refusing to deliver the books, &c., to Edmonds, whom they had appointed as his successor, although the prisoner had tendered to them a bond, with condition, sum, security, &c., as required by the Court.   Edmonds issued an attachment against the prisoner for a contempt in refusing to enter the order of allowance directed by the Court, and for which cause the prisoner had been ordered to be removed from his office, and appealed.   Under this authority the sheriff arrested the prisoner and delivered him to Warren by order of the Court, to be brought before this Court.   On this writ, Warren took the prisoner and this void writ of attachment, and returns to this Court, that he holds the prisoner in custody, under an order of commitment for

fifteeen days, made by the Commissioners' Court. We have said that the clerkship under these circumstances was not vacant, and that the supposed writ of attachment issued by Edmonds is illegal and void; and that the County Commissioners' Court have no power or jurisdiction to imprison their clerk for refusing to deliver over the books, &c., of his office. The law has provided another remedy to obtain the possession of them, (Rev. Stat. 432, ch. 87, §§ 10, 11,) by petition to a Judge of the Supreme or Circuit Court. The prisoner is entitled to his discharge from this imprisonment, on the grounds of the several causes for which a prisoner may be discharged as specified in the first, fourth, fifth and seventh causes in the third section of the *Habeas Corpus* Act, Rev. Stat. ch. 48, 270.

I have not adverted to every provision of law that I think calculated to throw light upon this question. I may, in conclusion, be permitted to remark, that it is with much regret that we witness such confusion and such a deplorable state of things, as is presented in this return. If men would take counsel, not of their wishes and passions, but of calm judgment, enlightened by the rules of conduct and of justice prescribed by the laws of their country, and pay due respect to the opinions of mankind, formed upon the principles of christian morality, there would seldom, if ever, be occasion for such scenes as are presented here. Citizens armed and attending to over-awe the Courts of the country, and deter them from acting in a certain manner; Courts aware of a strong feeling of unyielding opposition to certain acts that may, without detriment to the public service or justice, be omitted by them, and settled in another way, and before another tribunal, going on to do those acts perfectly regardless of public sentiment and excitement, are things but rarely witnessed, and are a great reproach to the Government. If men would pause, and reflect that there is at least a possibility that their opinions and desires may be wrong, and that there is a possibility that their adversary may be right, they will, at least, have made the first step towards conciliation and forbearance in the mode of settling their difficulties.

While the community approves their rights, it may not approve their mode of asserting and vindicating them. Some respect should be paid to the universal sense and opinions of the rest of the community.

I have made these remarks in the hope that some mode more consistent with law, order and good government may be mutually resorted to, to determine the question whether these claims are justly allowable against the county. It may easily and readily be done. An amicable suit could be instituted before the Circuit Court, or an appeal from an order of allowance could be taken, suspending in the meantime all further action on them in the County Court until the determination of the question. Thus peace and harmony could be brought about in their adjustment, and violence prevented, which the Government cannot tolerate and preserve its dignity. The right to allow them is not a question before us, and we cannot, therefore, now settle it.

The prisoner will be discharged.

The following separate opinion was delivered by

YOUNG, J. I concur with the majority of the Court in the opinion that the prisoner ought to be discharged. The time for which he was ordered to be imprisoned having expired, the warrant of commitment, whether legal or illegal, has spent its force, and he can no longer be detained in custody under it. I also concur in the opinion, that Thatcher had the right to appeal from the order of the County Commissioners' Court of Hancock county removing him from office as clerk, and that upon giving an appeal bond and perfecting the appeal to the satisfaction of the Court, he would, under ordinary circumstances, have been entitled to resume the duties of the office until the determination of the appeal in the Circuit Court. But I deny that he had the right, or that it would have been proper for the Court to have permitted him to act as such clerk in the interval between the time of making the order for his removal, and the perfecting of the appeal; or that he had a right to act during any part of the time that he stood in contempt of the Court.

The 29th section of chapter 27, on the subject of counties and County Commissioners' Courts, provides, "that the said Court shall have power to punish for contempts, as other Courts may do, and have all the power to a right exercise of the jurisdiction with which said Court is, or may be vested according to law." By this clause, the County Commissioners' Court has as ample power to punish for contempts, as this Court or the Circuit Courts possess, and of consequence, the incidental power to appoint a clerk *ad interim*, for such time as might be necessary, according to the circumstances of the case. Suppose the County Commissioners' Court, in the legitimate exercise of its powers, should direct the clerk to enter up an order of the Court, and he should obstinately and contemptuously refuse to do so, and they should order him to be committed for his contempt for any reasonable time, to the common jail of the county, could they not appoint a clerk, *ad interim*, to execute their orders by making the proper entries in their own book, or is this a *casus omissus* in the law, which would render it necessary for the Commissioners forthwith to adjourn, without an order of adjournment entered upon their book, and to suspend all further proceedings in Court until the clerk, after having suffered his imprisonment, or purged himself from his contempt, could be again restored to the proper exercise of the duties of his office? Such a construction of the Act, in my opinion, is neither warranted by reason or by law.

Nor can I admit the doctrine to be correct, that when an individual applies to the County Commissioners' Court for an allowance either for advances made, or services rendered to the county, and they make an order directing his claim to be paid out of the county treasury, that any number of the citizens of the county, under pretence of being tax payers, may come in and make themselves parties to the proceeding, and demand an appeal from such order to the Circuit Court.

KOERNER, J., said:

I am constrained to dissent from the opinion of the majority of the Court in some of the principles which it contains,

*Ex parte* Thatcher.

though I concur in the final order for discharging the prisoner for the reason that the time of his imprisonment has now expired.

The return shows that the clerk was ordered to be committed for contempt, for refusing to deliver up the books and papers of his office, while the warrant of commitment, which is made part of the return, states that the order for commitment was made for the reason that he refused to enter up certain orders made by the Court. I am constrained to believe, that the officer making the return is not at liberty to contradict the warrant of commitment, which he himself sets forth in his return. It is said, however, that the order to commit is informal or even void, not being signed by Thatcher, the then clerk, but by another person, signing as clerk *pro tem.* This objection, being purely technical, ought not to prevail. The clerk could not have well been required to make out orders for his own removal from office, or for his own commitment. While the clerk was thus at issue with the Court, showing cause and perfecting his appeal from the order of removal, it seems to me that the Court necessarily had authority to appoint a clerk *pro tem.* Besides, there was no necessity whatever to make out a written mittimus; a verbal direction was sufficient. That such a direction was made appears clearly from the return, independent of the warrant of commitment. That by virtue of said direction the prisoner was legally detained at the time he applied under the *Habeas Corpus* Act, seems to me to admit of but little doubt.

*Prisoner discharged.*